44.     Defendants were also motivated to inflate the price of Biopure's common stock in order to sell over $17 million of stock in a private placement. On July 23, 2003, defendants announced that Biopure had raised $17.2 million in gross proceeds through the sale of 3,083,000 shares of its common stock at $5.58 per share (the "July 23, 2003 Press Release"). According to the July 23, 2003 Press Release, "The company intends to use the estimated net proceeds of approximately $16.2 million for general corporate purposes, including capital expenditures and to meet working capital needs."

## CLASS ACTION ALLEGATIONS

45.     Plaintiffs bring this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the Class consisting of all persons or entities that purchased common stock of Biopure on the open market during the Class Period March 5, 2003 through December 24, 2003. Excluded from the Class are the defendants herein, members of their immediate families, any subsidiary, affiliate, or control person of any such person or entity, officers and directors of Biopure and the legal representatives, heirs, successors or assigns of any such excluded party.

46.     The members of the Class are so numerous that the joinder of all members is impracticable. While the exact number of Class members is unknown to plaintiffs at this time and can only be ascertained through appropriate discovery, plaintiffs believe that there are, at a minimum, over one thousand members of the Class. During the Class Period, the Company reported that it had approximately 44,378,466 shares of its common stock outstanding. The holders of these shares are believed to be geographically dispersed throughout the United States. Biopure common stock is listed and actively traded on the NASDAQ National Market System,

widely recognized as an efficient market. During the Class Period, millions of shares of Biopure common stock were traded.

47. Plaintiffs' claims are typical of the claims of the Class, as plaintiffs purchased common shares of Biopure on the open market during the Class Period and sustained damages arising out of defendants' conduct in violation of federal law as complained of herein.

48. Plaintiffs will fairly and adequately protect the interests of the members of the Class, and have retained counsel competent and experienced in class action and securities litigation. Plaintiffs have no interests that are contrary to or in conflict with those of the Class they represent.

49. Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting only individual members of the Class. Among the questions of law and fact common to the Class that predominate over any questions affecting individual members of the Class are:

    (i) whether defendants violated Sections 10(b) and 20(a) of the Exchange Act, and SEC Rule 10b-5 promulgated thereunder;

    (ii) whether defendants participated in and pursued the common course of conduct complained of herein;

    (iii) whether documents, filings, releases and statements disseminated to the investing public, during the Class Period, omitted and/or misrepresented material facts about the Company;

    (iv) whether the market price of Biopure's common stock during the Class Period was artificially inflated due to the nondisclosures and/or misrepresentations complained of herein;

(v) whether defendants acted knowingly, willfully, or recklessly in omitting to state and/or misrepresenting material facts; and

(vi) whether the members of the Class have sustained damages and, if so, what is the proper measure of such damages.

50. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Since the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for the Class members to seek redress for the wrongful conduct alleged. Plaintiffs know of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a class action.

## FRAUD ON THE MARKET PRESUMPTION

51. Plaintiffs will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

i) defendants made public misrepresentations or failed to disclose material facts during the Class Period;

ii) the omissions and misrepresentations were material;

iii) the securities of the Company traded in an efficient market;

iv) Biopure traded on the NASDAQ National Market System and was followed by analysts, including, ThinkEquity Partners. The price of Biopure's stock reflected the effect of news disseminated in the market;

v) the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

vi) plaintiffs and other members of the Class purchased their Biopure stock between the time the defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted

20

or misrepresented facts.

52. Based upon the following, plaintiffs and other members of the Class are entitled to the presumption of reliance upon the integrity of the market.

## NO STATUTORY SAFE HARBOR

53. The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the false statements pleaded in this Complaint, because none of the statements pleaded herein were identified as "forward-looking statements" when made. Nor did meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the statements accompany those statements. To the extent that the statutory safe harbor does apply to any statements pleaded herein deemed to be forward-looking, the defendants are liable for those false forward-looking statements, because at the time each of those statements was made the speaker actually knew the forward-looking statement was false and/or the statement was authorized and/or approved by an executive officer of the Company, who actually knew that those statements were false when made.

## PLAINTIFF'S INVESTIGATION

54. Plaintiffs' information and belief are based upon, among other things, their own and/or counsel's investigation, which included without limitation: (a) review and analysis of filings made by Biopure with the SEC; (b) review and analysis of press releases and other publications disseminated by certain of the defendants; (c) review of news articles and shareholder communications concerning Biopure; and (d) review of other publicly available information concerning Biopure. Plaintiffs believe that further substantial evidentiary support will exist for the allegations herein after a reasonable opportunity for discovery is provided. Many of the facts supporting the allegations contained herein are known only to defendants or

21

are within their control.

## COUNT I
## VIOLATIONS OF SECTION 10(B) OF THE EXCHANGE ACT AND RULE 10b-5 PROMULGATED THEREUNDER AGAINST ALL DEFENDANTS

55. Plaintiffs repeat and reallege each and every allegation contained above as if fully set forth herein.

56. During the Class Period, defendants disseminated or approved the false statements specified above, which they knew or recklessly disregarded were materially false and misleading in that they contained material misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

57. Defendants violated §10(b) of the 1934 Act and Rule 10b-5 in that they:

    a. Employed devices, schemes and artifices to defraud;

    b. Made untrue statements of material facts or omitted to state material facts necessary in order to make statements made, in light of the circumstances under which they were made not misleading; or

    c. Engaged in acts, practices and a course of business that operated as a fraud or deceit upon plaintiffs and others similarly situated in connection with their purchases of Biopure publicly traded securities during the Class Period.

58. Defendants (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material facts and/or omitted to state material facts necessary to make the

22

statements not misleading; and (c) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for Biopure's securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5. All defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

59. Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about the business, operations and future prospects of Biopure as specified herein.

60. These defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Biopure's value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and omitting to state material facts necessary in order to make the statements made about Biopure and its business operations and future prospects in the light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of Biopure securities during the Class Period.

61. Defendants Moore's and Rausch's primary liability, and controlling person liability, arises from the following facts: (i) Moore and Rausch were high-level executives and/or directors at the Company during the Class Period and members of the Company's management team or had control thereof; (ii) by virtue of their responsibilities and activities as senior officers

23

and/or directors of the Company were privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, studies, projections and/or reports; (iii) Moore and Rausch enjoyed significant personal contact and familarity with other officers and directors and were advised of and had access to other members of the Company's management term, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (iv) Moore and Rausch were aware of the Company's dissemination of information to the investing public which they knew or recklessly disregarded was materially false and misleading.

62. The defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth in that he failed to ascertain and to disclose such facts, even though such facts were available to him. Such defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purposes and effect of concealing Biopure's operating condition and future business prospects from the investing public and supporting the artificially inflated price of its securities. As demonstrated by defendants' misstatements and omissions of the Company's business, operations and FDA applications throughout the Class Period, defendants, if they did not have actual knowledge of the misrepresentations and omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false and misleading.

63. As a result of the dissemination of the materially false and misleading information and failure to disclose material facts, as set forth above, the market price of Biopure's securities was artificially inflated during the Class Period. In ignorance of the fact that market prices of Biopure's publicly-traded securities were artificially inflated, and relying

24

directly or indirectly on the false and misleading statements made by defendant, or upon the integrity of the market in which the securities trade, and/or on the absence of material adverse information that was known to or recklessly disregarded by defendants but not disclosed in public statements by defendants during the Class Period, plaintiffs and the other members of the Class acquired Biopure securities during the Class Period at artificially high prices and were damaged thereby.

64. At the time of said misrepresentations and omissions, plaintiffs and the other members of the Class were ignorant of their falsity, and believed them to be true. Had plaintiffs and the other members of the Class and the marketplace known the truth regarding the problems that Biopure was experiencing, which were not disclosed by defendants, plaintiffs and the other members of the Class would not have purchased or otherwise acquired their Biopure securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices which they paid.

65. By virtue of the foregoing, defendants violated Section 10(b) of the Exchange Act, and Rule 10b-5 promulgated thereunder.

66. As a direct and proximate result of defendants' wrongful conduct, plaintiffs and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

**COUNT II**

**VIOLATION OF SECTION 20(a) OF THE EXCHANGE ACT
AGAINST THE INDIVIDUAL DEFENDANTS**

67. Plaintiffs repeat and reallege each and every allegation contained in each of the foregoing paragraphs as if set forth fully herein.

68. The Individual Defendants, by virtue of their positions, stock ownership and specific acts described above, were, at the time of the wrongs alleged herein, controlling persons within the meaning of Section 20(a) of the Exchange Act.

69. The Individual Defendants had the power and influence and exercised the same to cause Biopure to engage in the illegal conduct and practices complained of herein.

70. By reason of the conduct alleged in Count I of the Complaint, the Individual Defendants are liable for the aforesaid wrongful conduct, and are liable to plaintiffs and to the other members of the Class for the substantial damages which they suffered in connection with their purchases of Biopure common stock during the Class Period.

## PRAYER FOR RELIEF

71. Determining that the instant action is a proper class action maintainable under Rule 23 of the Federal Rules of Civil Procedure;

72. Awarding compensatory damages and/or rescission as appropriate against defendants, in favor of plaintiffs and all other members of the Class for damages sustained as a result of defendants' wrongdoing.

73.. Awarding plaintiffs and the other members of the Class the costs and disbursements of this suit, including reasonable attorneys', accountants' and experts' fees; and

74.. Awarding such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury.

Dated: January 27, 2004

**BERMAN DEVALERIO PEASE TABACCO BURT & PUCILLO**

*/s/ Patrick J. Egan*

Jeffrey C. Block, BBO # 600747
Patrick T. Egan, BBO # 637477
One Liberty Square, 8th Floor
Boston, Massachusetts 02109
Tel: (617) 542-8300
Fax: (617) 542-1194

**LAW OFFICES OF CURTIS V. TRINKO, LLP**

Curtis V. Trinko
16 West 46th Street, 7th Floor
New York, New York 10036
Tel: (212) 490-9550
Fax: (212) 986-0158

**ATTORNEYS FOR PLAINTIFFS**

## CERTIFICATION OF NAMED PLAINTIFFS
## PURSUANT TO FEDERAL SECURITIES LAWS

**I, NANCY L. PINCKNEY and GERTRUDE PINCKNEY,** hereby certify as follows:

1. We have reviewed the complaint prepared for us concerning BioPure Corporation, brought under the federal securities laws, and have authorized the filing of such an action.

2. Plaintiffs did not purchase, or otherwise acquire, the securities of BioPure Corporation, that are the subject of this action, at the direction of plaintiffs' counsel, or in order to participate in any private action arising under the federal securities laws.

3. We are willing to serve as representative parties on behalf of the class, and will provide testimony at a deposition and/or at trial, if necessary.

4. Plaintiffs' transactions in the securities that are the subject of this litigation during the class period set forth in the complaint are, as follows:

   a). Plaintiffs purchased 25 shares of BioPure Corporation common stock on May 30, 2003 at $ 6.6792 per share;

   b). Plaintiffs still hold the aforesaid stock.

5. During the three years prior to the date hereof, plaintiffs have not filed an action in which they have sought to serve, or have served, as representative parties for a class in any action filed under the federal securities laws.

6. Plaintiffs will not accept any payment for serving as representative parties on behalf of the class beyond their pro rata share of any recovery, or as ordered or approved by the Court, including the award to a representative of reasonable costs and expenses (including lost wages) directly relating to the representation of the class.

We declare under penalty of perjury that the foregoing is true and correct to the best of our knowledge and belief. Executed this 21 day of January, 2004 at Ossining, New York.

_____
NANCY L. PINCKNEY

_____
GERTRUDE PINCKNEY